* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Donovan, with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing before Deputy Commissioner Donovan as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant-carrier Liberty Mutual was the carrier on the risk.
3. An employee-employer relationship existed between plaintiff and defendant-employer Mastec at all relevant times.
4. Plaintiff sustained a compensable injury by accident on April 12, 2002, arising out of and in the course of his employment with defendant-employer.
5. Plaintiff's average weekly wage was $1,075.60, which yields a compensation rate of $654.00 per week, the maximum compensation rate for 2002.
6. The issues for determination are:
 a. Whether plaintiff is entitled to have Dr. Joseph E. Burkhardt designated as his treating physician.
 b. Whether plaintiff is entitled to continuing vocational rehabilitation, including retraining and schooling.
c. Whether plaintiff has refused suitable employment.
 d. Whether plaintiff is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
7. The parties stipulated the following documentary evidence:
 a. Stipulated Exhibit #1: Medical records, I.C. Forms, Pre-trial Agreement
8. In addition to Stipulated Exhibit #1, the following Exhibits were admitted into evidence:
 a. Plaintiff's Exhibit #1: School schedule, student finances, and records.
 * * * * * * * * * * *
Based upon all of the competent evidence adduced from the record and the reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Donovan, plaintiff was 41 years old and was residing in Hickory Corners, Michigan, having moved there from North Carolina in August 2002. As of April 12, 2002, plaintiff had a high school education and some college credits.
2. On April 12, 2002, plaintiff was employed by Mastec as a cable television line foreman. On that date, plaintiff suffered a compensable injury by accident to his right ankle when he stepped into a hole on the work site. Defendants accepted plaintiff's claim and, at the time of the hearing before Deputy Commissioner Donovan, had been paying plaintiff temporary total disability compensation at the weekly rate of $654.00, based upon an average weekly wage of $1,075.00, since the date of injury and continuing.
3. On April 18, 2002, plaintiff began treatment with Dr. William H. Jarman of Carolina Orthopedic. Plaintiff was diagnosed with a sprained ankle. On May 29, 2002, Dr. Jarman released plaintiff to return to work with the restrictions of no pole climbing with spikes, a lifting and pushing limit of 50 pounds, and ladder climbing occasionally. By June 17, 2002, plaintiff's only restriction was no pole climbing with spikes. On July 29, 2002, plaintiff was released by Dr. Jarman with a permanent partial disability rating of 5% to his right ankle and the permanent restrictions of no pole climbing and no repetitive use of the right foot such as digging holes or standing on ladder rungs.
4. Mastec was unable to provide plaintiff with employment within his restrictions. Shortly thereafter, plaintiff moved to Michigan to reside with his parents.
5. After moving to Michigan, plaintiff began to experience pain and clicking in his ankle. He requested authorization from defendants to be seen by Dr. William Comai of Battle Creek Orthopedics, but authorization was refused. On November 8, 2002, plaintiff filed a motion with the Industrial Commission for Medical Treatment and to designate a Physician of Plaintiff's Choosing. By Order dated June 19, 2003, defendants were ordered to "provide for plaintiff to undergo a one-time evaluation by a physician in Michigan within a reasonable distance of plaintiff's current residence upon whom the parties can agree, so that such physician can provide his/her recommendations for the further course of plaintiff's medical treatment."
6. On August 13, 2003, at the direction of defendants, plaintiff presented to Dr. Joseph E. Burkhardt with complaints of right ankle pain and left medial sided knee pain. Dr. Burkhardt diagnosed plaintiff with possible osteochondral injury to the talus due to repeat sprains and lateral ankle instability, and medial compartment chondromalacia and/or a possible torn meniscus. Dr. Burkhardt recommended an MRI of both the ankle and knee. He further opined that because of the condition of plaintiff's ankle "he would be better to stay with a low demand job which involves sit down position and lifting of light weight objects."
7. In the year following his examination by Dr. Burkhardt, plaintiff sought authorization from defendants to proceed with Dr. Burkhardt's recommendations and to have Dr. Burkhardt designated as his authorized treating physician. Defendants refused both requests and instead sought to have plaintiff re-evaluated by another physician, Dr. Barry Collins.
8. Approximately 16 months after plaintiff's examination with Dr. Burkhardt, defendants scheduled an appointment for plaintiff to meet with Dr. Collins on December 8, 2004; however, plaintiff did not attend the appointment due to his desire to continue treating with Dr. Burkhardt.
9. On January 2, 2003, plaintiff enrolled in Kellogg Community College, a community technical college, in an effort to obtain a degree in the Applied Science of Plastic Technology. At the time of the hearing before Deputy Commissioner Donovan, plaintiff had continuously attended classes year round and was expected to receive his degree in May 2005. He spent approximately 30 hours per week at the institute and an additional 24 hours per week studying for classes.
10. On June 12, 2003, plaintiff received a response to his request for vocational assistance from the Michigan Department of Career Development. Plaintiff was contacted by vocational specialist Edward Keeter after receiving approval from Stephanie Robert-Jones of Liberty Mutual for an initial assessment. From that time until April 5, 2004, the date of the final report, Keeter met with plaintiff, conducted a transferable skills assessment, prepared progress reports and had multiple contacts with plaintiff.
11. In the April 5, 2004, Final Report, Keeter noted (1) that his services were being cancelled by Liberty Mutual; (2) that he had created a draft of an individual plan for employment that was never approved by Liberty Mutual; and (3) he was not authorized by Liberty Mutual to follow up the transferable skills analysis with a labor market survey to determine the availability of employment for plaintiff or plaintiff's ability to compete for those openings. Keeter also noted that plaintiff was on time and prepared for each of their meetings, that he was cooperative and took initiative throughout the vocational rehabilitation process. Lastly, Keeter opined that "in my professional opinion the degree [plaintiff] is attempting to obtain is an appropriate objective, although a labor market survey may indicate that other job options could be obtained with less training."
12. Plaintiff would benefit from the continued assistance of Keeter or other qualified vocational specialist upon his completion of his college courses.
13. Plaintiff has not returned to any type of suitable employment.
14. Plaintiff was released by Dr. Jarman, the original treating physician designated by defendants. Defendants chose Dr. Burkhardt to provide plaintiff with an IME. Defendants have offered no reasonable explanation for their refusal to accept Dr. Burkhardt as plaintiff's treating physician or to allow plaintiff to continue with the treatment recommended by Dr. Burkhardt other than the fact that they do not like the results he produced. Thereafter, defendants waited an inordinate amount of time before selecting another physician of their choosing for a second IME.
15. Plaintiff's attending school in an attempt to obtain a degree that will provide an opportunity for employment within his restrictions constitutes compliance with suitable vocational rehabilitation efforts.
16. Defendants have defended this claim without reasonable grounds.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of the employment on April 12, 2002. N.C. Gen. Stat. § 97-2(6).
2. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $654.00 per week for the period from April 12, 2002 and continuing until plaintiff returns to employment or until further Order of the Commission. N.C. Gen. Stat. § 97-29.
3. Defendants chose Dr. Burkhardt to provide plaintiff with an IME, and have offered no reasonable explanation for their refusal to accept Dr. Burkhardt as plaintiff's treating physician. Thereafter, defendants waited an inordinate amount of time before selecting another physician of their choosing for a second IME. This constitutes a failure of defendants to provide medical care, allowing plaintiff the right to chose his own treating physician. Accordingly, Dr. Burkhardt is hereby designated as plaintiff's authorized treating physician. N.C. Gen. Stat. § 97-25.
4. As plaintiff has not received the additional treatment recommended by Dr. Burkhardt, plaintiff has not reached maximum medical improvement.Crawley v. Southern Devices, Inc., 31 N.C. App. 284, 288-89,229 S.E.2d 325, 328 (1976), disc. rev. denied, 292 N.C. 467, 234 S.E.2d 2
(1977).
5. Plaintiff is entitled to have defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure, or lessen the period of disability. N.C. Gen. Stat. § 97-2(19).
6. Plaintiff has made repeated and consistent steps without the assistance of defendants to obtain sufficient vocational rehabilitation to allow him to return to suitable employment within his restrictions. The evidence shows that defendants refused to approve any efforts made on the part of plaintiff's authorized vocational rehabilitation specialist, which were designed to assist plaintiff in his return to work. There is no merit to the claim that plaintiff's compensation should be terminated due to his lack of effort to return to suitable employment or that he has refused suitable employment. N.C. Gen. Stat. § 97-32.
7. Plaintiff's action in attending school in an attempt to obtain a degree that will provide an opportunity for employment within his restrictions constitutes compliance with suitable vocational rehabilitation efforts. As plaintiff's degree will tend to lessen his period of disability, plaintiff is entitled to reimbursement by defendants for the cost of his tuition through the end of the school program. N.C. Gen. Stat. § 97-25.5.
9. After careful review of the arguments presented by both parties in this case, the Full Commission concludes that defendants have defended this case unreasonably, and accordingly that sanctions available under N.C. Gen. Stat. § 97-88.1 are warranted.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay temporary total disability compensation to plaintiff at the rate of $654.00 per week for the period beginning on April 12, 2002, and continuing.
2. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in Paragraph 1 above is hereby approved. Defendants shall pay directly to plaintiff's counsel every fourth compensation check.
3. Defendants shall pay medical expenses incurred or to be incurred when bills for the same have been approved, including those of plaintiff's authorized treating physician, Dr. Joseph E. Burkhardt, in accordance with the provisions of the Act.
4. Defendants shall reimburse plaintiff for the costs of obtaining his degree at Kellogg Community College. Specifically, defendants shall reimburse plaintiff for the costs of tuition and books not covered by Pell Grants, scholarships, or other sources of educational funding received by plaintiff and not requiring repayment.
5. Plaintiff shall seek employment upon his completion of his college courses.
6. Should plaintiff deem it necessary, Edward Keeter or other qualified vocational rehabilitation specialist shall be reinstated to assist plaintiff in obtaining employment following his completion of his college courses.
7. Defendants shall pay the costs of the hearings before Deputy Commissioner Donovan and before the Full Commission, including reasonable plaintiff's attorney's fees in an amount not to exceed $500.00, pursuant to N.C. Gen. Stat. § 97-88.1.
This __ day of February, 2006.
 S/_________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_________________ PAMELA T. YOUNG COMMISSIONER
 S/_________________ BUCK LATTIMORE CHAIRMAN